**CASE NO. 23-20494**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

### ELIZABETH ESCOBEDO,

Plaintiff – Appellee,

v.

### ACE GATHERING, INCORPORATED,

Defendant – Appellant.

---

On Appeal from the United States District Court
for the Southern District of Texas
Civil Case No. 4:22-cv-538

---

## REPLY BRIEF OF DEFENDANT – APPELLANT ACE GATHERING, INC.

---

**Peter J. Stuhldreher**
Texas Bar No. 24056393
**Mark D. Temple**
Texas Bar No. 00794727
**Paul M. Knettel**
Texas Bar No. 24102031

**BAKER & HOSTETLER LLP**
811 Main Street, Suite 1100
Houston, Texas 77002
Phone: (713) 751-1600
Facsimile: (713) 751-1717
pstuhldreher@bakerlaw.com
mtemple@bakerlaw.com
pknettel@bakerlaw.com

**Counsel for Defendant – Appellant**
**Ace Gathering, Inc.**

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................1

ARGUMENT .....................................................................................6

I.    THE    MCA    EXEMPTION    MUST    BE    BROADLY
      CONSTRUED ...........................................................................6

II.   PLAINTIFFS' TRANSPORTATION OF CRUDE OIL WAS IN
      THE FLOW OF INTERSTATE COMMERCE ...................................7

      A.    The "Fixed and Persisting Intent" Inquiry Does Not Apply ..... 8

            1.    Plaintiffs Failed to Adequately Brief Their Argument that
                  the "Fixed and Persisting Intent" Inquiry Applies ...........9

            2.    Plaintiffs' Cases Do Not Support Application of the
                  "Fixed and Persisting Intent" Inquiry............................10

            3.    The Crude Oil Plaintiffs Transported was "Actually
                  Moving" in Interstate Commerce ...................................13

      B.    If The Court Applies the "Fixed and Persisting Intent"
            Inquiry, Ace's Customers' Intent to Ship the Crude Oil
            Out-of-State Controls............................................................ 14

            1.    Ace's Customers are a Shipper of the Crude Oil
                  Transported by Plaintiffs .................................................14

            2.    Plaintiffs' Case Law is Not Binding on this Court and, In
                  All Events, Wholly Distinguishable ...............................17

            3.    If Plaintiffs' Contention Were Accepted, No Independent
                  Intrastate Carrier Could Ever be Part of Interstate
                  Commerce ......................................................................21

III.  PLAINTIFFS HAD A REASONABLE EXPECTATION OF
      INTERSTATE TRAVEL ..............................................................21

      A.    Fifth Circuit Precedent Forestalls Plaintiffs' Argument for
            a District-by-District Analysis ............................................. 22

ii

B.    Ace's Assignment System Does Not Prevent Summary
      Judgment ............................................................................ 25

C.    Ace's Other Evidence Confirms Plaintiffs' Reasonable
      Expectation of Interstate Driving ......................................... 26

D.    The Undisputed Evidence Warrants Summary Judgment to
      Ace on Plaintiffs' Reasonable Expectation of Interstate
      Driving ................................................................................ 26

CONCLUSION AND RELIEF SOUGHT .............................................................28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alice v. GCS, Inc.*,
  No. 05-C-50132, 2006 WL 2644958 (N.D. Ill. Sept. 14, 2006)..................12, 19

*Allen v. Coil Tubing Servs., L.L.C.*,
  755 F.3d 279 (5th Cir. 2014) .......................................................*passim*

*Amaya v. NOYPI Movers, L.L.C.*,
  741 F. App'x 203 (5th Cir. 2018) .........................................7, 23, 24

*B. A. Kelly Land Co. v. Aethon Energy Operating, LLC*,
  25 F.4th 369 (5th Cir. 2022) ................................................................28

*Barefoot v. Mid-Am. Dairymen, Inc.*,
  16 F.3d 1216 (5th Cir. 1994) (unpub., per curiam) ...........................13

*Beck v. Somerset Techs., Inc.*,
  882 F.2d 993 (5th Cir. 1989) .........................................................4, 22

*Bilyou v. Dutchess Beer Distributors, Inc.*,
  300 F.3d 217 (2d Cir. 2002) ........................................................11, 19

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
  345 F.3d 347 (5th Cir. 2003) ................................................................9

*Brown v. AGM Ent., Inc.*,
  No. CIV. H-07-3439, 2008 WL 2704657 (S.D. Tex. July 3, 2008)..................10

*California Trucking Ass'n v. I.C.C.*,
  900 F.2d 208 (9th Cir. 1990) ..............................................................12

*Carley v. Crest Pumping Techs., L.L.C.*,
  890 F.3d 575 (5th Cir. 2018) ..........................................................1, 7

*Carroll v. Metro. Ins. & Annuity Co.*,
  166 F.3d 802 (5th Cir. 1999) ................................................................6

iv

*Collins v. Heritage Wine Cellars, Ltd.*,
589 F.3d 895 (7th Cir. 2009) ..............................................................12

*Craft v. Ray's, LLC*,
No. 1:08-CV-627-RLY-JMS, 2009 WL 3163148 (S.D. Ind. Sept.
29, 2009), *amended on reconsideration*, 2010 WL 148306 (S.D.
Ind. Jan. 13, 2010) ..............................................................12, 19, 20

*Deherrera v. Decker Truck Line, Inc.*,
820 F.3d 1147 (10th Cir. 2016) ..........................................................12

*Estrada v. Ecology Servs. Refuse & Recycling, LLC*,
No. CV-GLR-17-496, 2018 WL 3458563 (D. Md. June 12, 2018)............12, 19

*Faludi v. U.S. Shale Sols., L.L.C.*,
950 F.3d 269 (5th Cir. 2020) ..............................................................25

*Ferrant v. Lowe's Home Ctrs., Inc.*,
494 F. App'x 458 (5th Cir. 2012)........................................................27

*Foreman v. Five Star Food Serv., Inc.*,
950 F. Supp. 2d 958 (M.D. Tenn. 2013), *vacated in part*, 2013 WL
5675899 (M.D. Tenn. Oct. 18, 2013) ..................................................11

*Galbreath v. Gulf Oil Corp.*,
413 F.2d 941 (5th Cir. 1969) ........................................................7, 10

*Glanville v. Dupar, Inc.*,
No. CIV.A. H-08-2537, 2009 WL 3255292 (S.D. Tex. Sept. 25,
2009) ....................................................................................................11

*Guy v. Absopure Water Co.*,
No. 20-12734, 2023 WL 1814212 (E.D. Mich. Feb. 8, 2023) ....................11, 18

*Haynes v. S. Carolina Waste LLC*,
633 F. Supp. 3d 769 (D.S.C. 2022) ..............................................12, 20

*Horvath v. City of Leander*,
946 F.3d 787 (5th Cir. 2020) ..............................................................28

*Kennedy v. Equity Transportation Co., Inc.*,
663 F. App'x 38 (2d Cir. 2016) ....................................................8, 12

v

*Levinson v. Spector Motor Serv.*,
  330 U.S. 649 (1947) .......................................................................... 1, 7

*Lyons v. Lancer Ins. Co.*,
  681 F.3d 50 (2d Cir. 2012) ................................................................. 16

*Merchants Fast Motor Lines, Inc. v. I.C.C.*,
  528 F.2d 1042 (5th Cir. 1976) ............................................................ 13

*Noll v. Flowers Foods Inc.*,
  442 F. Supp. 3d 345 (D. Me. 2020) .................................................... 16

*Olibas v. Barclay*,
  838 F.3d 442 (5th Cir. 2016) ........................................................ *passim*

*Raymond v. Mid-Bronx Haulage Corp.*,
  No. 15-CIV-5803, 2017 WL 1251137 (S.D.N.Y. Mar. 31, 2017) .............. 11, 20

*Romero v. Fueltech Oil Serv. Corp.*,
  No. 09-21948-CIV, 2010 WL 11505519 (S.D. Fla. Apr. 5, 2010) ........ 11, 18, 19

*Shew v. Southland Corp.*,
  370 F.2d 376 (5th Cir. 1966) ............................................................... 1

*Sierra Club v. U.S. Army Corps of Engineers*,
  803 F.3d 31 (D.C. Cir. 2015) .............................................................. 10

*Siller v. L & F Distributors, Ltd.*,
  109 F.3d 765 (5th Cir. 1997) (unpub., per curiam) .................................... *passim*

*Sinclair v. Beacon Gasoline Co.*,
  447 F. Supp. 5 (W.D. La. 1976), *aff'd*, 571 F.2d 978 (5th Cir.
  1978) ............................................................................................. 24

*Sindhi v. Raina*,
  905 F.3d 327 (5th Cir. 2018) ................................................................ 9

*Songer v. Dillon Res., Inc.*,
  618 F.3d 467 (5th Cir. 2010) ............................................... 5, 7, 22, 23

*Texas Alcoholic Beverage Comm'n v. Live Oak Brewing Co., LLC*,
  537 S.W.3d 647 (Tex. App.—Austin 2017) ......................................... 16

*Texas v. United States*,
    866 F.2d 1546 (5th Cir. 1989) ....................................................*passim*

*United States v. Cap. Transit Co.*,
    338 U.S. 286 (1949).....................................................................13

*Veney v. John W. Clarke, Inc.*,
    28 F. Supp. 3d 435 (D. Md. 2014)...........................................12, 20

*Walters v. Am. Coach Lines Of Miami, Inc.*,
    575 F.3d 1221 (11th Cir. 2009) ......................................................24

**Other Authorities**

29 C.F.R. § 782.7(b)(1).....................................................................2, 13

29 C.F.R. § 782.7(b)(2)..............................................................2, 8, 10, 12

Dept. of Transp., Application of the Federal Motor Carrier Safety
    Regulations, 46 Fed. Reg. 37,902-02, 1981 WL 115508 at **37902–
    03 (July 23, 1981) .......................................................................4, 26

Interstate Commerce Commission, Policy Statement – Motor Carrier
    Interstate Transportation From Out-Of-State Through Warehouses
    to Point in Same State,  8 I.C.C. 2d 470, 1992 WL 122949 (April
    27, 1992) ....................................................................................8, 12

Dept. of Transp., *General Pipeline FAQs*,
    https://www.phmsa.dot.gov/faqs/general-pipeline-faqs ...................10

## INTRODUCTION

"There is no concurrent jurisdiction between the Fair Labor Standards Act and the Motor Carrier Act." *Shew v. Southland Corp.*, 370 F.2d 376, 380 (5th Cir. 1966). So, this appeal affects more than whether Ace owes Plaintiffs overtime pay under the FLSA.[1] It will determine whether the DOT—the "entity with a greater understanding of the particular safety concerns" facing "operators of vehicles affecting highway safety"—has jurisdiction over Plaintiffs and, thus, this appeal presents significant issues of public safety. *Carley v. Crest Pumping Techs., L.L.C.*, 890 F.3d 575, 579 (5th Cir. 2018). The undisputed facts and applicable legal principles establish that the DOT has jurisdiction over Plaintiffs' work driving large tanker trucks carrying flammable crude oil on public roads and highways as Ace Crude Oil Drivers. And rightly so: such result "give[s] full effect to the [MCA's] safety program to which Congress has attached ***primary importance***, even to the corresponding exclusion by Congress of certain employees from the benefits of the compulsory overtime pay provisions of the [FLSA]." *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 662 (1947) (emphasis added).

Plaintiffs' Response Brief ("Response") confirms that the parties agree on the relevant facts and <u>only</u> disagree about the application of those undisputed facts to the legal question of whether Plaintiffs' work affected interstate commerce

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in Ace's Brief.

1

within the meaning of the MCA.  *See* Response at 2 (only identifying interstate commerce issues).  To incorrectly argue that Plaintiffs' work did not affect interstate commerce, Plaintiffs rely on non-binding and wholly distinguishable case law and, in certain instances, invent legal standards that are inconsistent with binding precedent.

**First**, Plaintiffs attempt to distract from the undisputed fact that crude oil they transported continuously moved in an interstate journey by insisting, without support, that the "fixed and persisting intent" inquiry applies and that only Ace's intent can be considered.  The "fixed and persisting intent" inquiry addresses a specific scenario: when the interstate flow of goods is interrupted by a stop in a warehouse.  *E.g.*, 29 C.F.R. § 782.7(b)(2) (inquiry applies to intrastate transportation "from a storage terminal of commodities which have had a prior movement … from an origin in a different State" (emphasis added)).  The undisputed facts show no such warehousing interrupted the interstate flow of the crude oil at issue here.  Thus, the general rule controls: intrastate transportation is part of interstate commerce "if what is being transported is actually moving in interstate commerce;" the "fact that other carriers transport it out of or into the State is not material." *Id.* § 782.7(b)(1) (emphasis added).

And, even if the "fixed and persisting intent" inquiry applies (it does not), Plaintiffs provide no basis for ignoring Ace's customers' undisputed intent to ship

the crude oil at issue out-of-Texas, using Ace for the first leg of this journey. Rather, Plaintiffs' argument defies applicable regulations and this Court's precedent. Specifically, this Court held in *Siller* that defendant's in-Texas transportation was in interstate commerce because its <u>customer</u>—<u>not</u> defendant— had the requisite "intent … to move its products continuously from its out-of-state breweries to its in-state retailer-customers, via a distributor"—defendant. *Siller v. L & F Distributors, Ltd.*, 109 F.3d 765 (5th Cir. 1997) (unpub., per curiam). The undisputed facts here show that, like *Siller*, although Ace's customers "did not ship [the] goods" during the Texas leg, they (1) "arranged with" Ace to do so via their allocation contracts, (2) "inaugurated the [interstate] shipment" by requiring Ace to obtain the crude oil so they could ship it to out-of-state refineries; and (3) "maintained control over [the] products" during Ace's leg by dictating the quantities, specifications, and destinations of the crude oil. *Id.* Tellingly, Plaintiffs do not even <u>attempt</u> to distinguish *Siller* or the other applicable regulations and precedent relied on by Ace—which establish that Plaintiffs' transportation of crude oil was in interstate commerce even under the "fixed and persistent intent" inquiry.

**<u>Second</u>**, Plaintiffs incorrectly claim genuine disputes of material fact exist regarding this Court's *Olibas*[2] factors for determining whether Ace's Crude Oil Drivers had a reasonable expectation of interstate driving, but <u>never</u> identify <u>any</u>

---

[2] *Olibas v. Barclay*, 838 F.3d 442, n. 11 (5th Cir. 2016).

disputed material facts. Rather, they dispute the "results that flow from the admitted facts," but "[n]o issues of fact are created by this tactic." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 998 (5th Cir. 1989). For example, Plaintiffs do <u>not</u> dispute Ace's evidence about its Crude Oil Drivers' trips. Instead, they incorrectly contend that only interstate trips by Ace's South Texas ("STX") drivers should be considered. Contrary to Plaintiffs' argument, courts "look[] at the reasonable expectations of the employees *as a class*, even if, in doing so, the effect is to apply the MCA exemption to employees who rarely, or never, engage in interstate commerce." *Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279, 287 (5th Cir. 2014).

Plaintiffs also dispute the relevance of their Offer Letters and deposition testimony acknowledging—as a factual matter—that they expected to drive interstate for Ace. Contrary to Plaintiffs' contention, "statements from drivers" and "employment arrangements" <u>are</u> "[s]atisfactory evidence" of drivers' reasonable expectation of interstate driving. DOT, Application of the Federal Motor Carrier Safety Regulations, 46 Fed. Reg. 37,902-02, 1981 WL 115508 at **37902–03 (July 23, 1981).

Finally, Plaintiffs incorrectly contend that Ace's system for assigning interstate routes precludes summary judgment—but do <u>not</u> provide any evidence to dispute Ace's system itself. And, Plaintiffs' argument that this one *Olibas* factor,

4

alone, precludes summary judgment conflicts with this Court's holding that <u>no</u> factor "is dispositive." *Olibas*, 838 F.3d at 449 n.11.  In sum, the facts underlying the *Olibas* factors are <u>undisputed</u> and show that Ace's Crude Oil Drivers, including Plaintiffs, had a reasonable expectation of interstate driving as a matter of law.

Importantly, Ace's argument that the MCA applies to Plaintiffs is **not** a *post hoc* defense to this FLSA lawsuit.  Rather, throughout Plaintiffs' employment, Ace <u>undisputedly</u> was a registered interstate motor carrier with the DOT, required all Crude Oil Drivers, including Plaintiffs, to comply with all DOT safety regulations, and regularly sent drivers on routes that crossed state lines.  Ace's Brief at 5–7.  To now hold, based on Plaintiffs' novel legal theories—which are <u>irreconcilable with binding legal precedent</u>—that Plaintiffs were not covered by the MCA would "facilitate what Congress sought to prohibit—circumvention of [DOT's] regulatory authority" to exercise control over "employees of carriers in the interest of safety." *Songer v. Dillon Res., Inc.*, 618 F.3d 467, 473 (5th Cir. 2010) (quotations omitted).

The undisputed facts establish that Plaintiffs qualified for the MCA exemption.  Thus, this Court should reverse and render summary judgment in Ace's favor.

## **ARGUMENT**

Contrary to Plaintiffs' accusations, Ace does <u>not</u> "dispute the District Court's finding[s] of fact" in this interlocutory appeal.  Response at 7.[3]  The District Court could not have made any such disputable fact findings in its MSJ Order, since "findings involving material facts genuinely in dispute are reserved to … the trial stage."  *Carroll v. Metro. Ins. & Annuity Co.*, 166 F.3d 802, 808 (5th Cir. 1999).  Rather, the District Court and this Court <u>already recognized</u> that Ace's disputes involve controlling legal issues regarding the MCA exemption's application.  (ROA.796–99.)  Specifically, Ace contends that, as a matter of law, (1) Plaintiffs' transportation of crude oil was in the flow of interstate commerce because the <u>undisputed</u> facts show that such transportation was part of the crude oil's continuous journey to out-of-state refineries; and (2) Plaintiffs had a "reasonable expectation of interstate driving" because the <u>undisputed</u> facts regarding the *Olibas* factors overwhelmingly support this outcome.  Applying the proper legal principles to these undisputed facts entitles Ace to summary judgment.

## I.   THE MCA EXEMPTION MUST BE BROADLY CONSTRUED

Plaintiffs incorrectly claim that Ace's contention that the MCA exemption should be broadly construed "runs contrary to controlling law."  Response at 9.  But Plaintiffs cite <u>no</u> such "controlling law."  Instead, Plaintiffs point to this

---

[3] *See also, e.g.*, Response at 27 (Ace "disagrees with the District Court's findings of fact"); *id.* at 29 (Ace asserted "'errors' in fact"); *id.* at 30 ("Ace simply disagrees on the facts"); *id.* at 44 (Ace disputes "District Court's interpretation of the facts").

Court's recognition that certain prior MCA exemption opinions remain good law despite stating the "now-erroneous principle" that FLSA exemptions should be construed narrowly. *Amaya v. NOYPI Movers, L.L.C.*, 741 F. App'x 203, 205 n.2 (5th Cir. 2018) (citing *Allen*, 755 F.3d at 283; *Songer*, 618 F.3d at 471). <u>Controlling</u> precedent holds the "MCA is … a remedial statute and should … be broadly construed." *Galbreath v. Gulf Oil Corp.*, 413 F.2d 941, 946 (5th Cir. 1969); *see also Levinson*, 330 U.S. at 662, 676 (MCA exemption is "unique" and must be interpreted "to give full effect to the safety program to which Congress has attached primary importance"). Broad construction ensures that "operators of vehicles affecting highway safety," like Plaintiffs, are "regulated by an entity with a greater understanding of the particular safety concerns": the DOT. *Carley*, 890 F.3d at 579.

## II. PLAINTIFFS' TRANSPORTATION OF CRUDE OIL WAS IN THE FLOW OF INTERSTATE COMMERCE

Plaintiffs contend that, in determining whether their work was in the "flow of interstate commerce," this Court must <u>only</u> consider Ace's "fixed and persisting intent" and ignore the <u>undisputed</u> interstate intent of Ace's customers and the actual movement of the crude oil across state lines. *See generally* Response at 10–31. This argument fails because: (1) the "fixed and persisting intent" inquiry does not apply where, as here, products were not warehoused after prior interstate movement; and (2) even if this inquiry applied, the intent of Ace's customers

7

matters where, as here, they inaugurate the interstate journey of the crude oil and control its movement throughout this journey.

### A.    The "Fixed and Persisting Intent" Inquiry Does Not Apply

The "fixed and persisting intent" inquiry was developed to address a specific situation: where products move interstate, sit in a warehouse, and are later shipped intrastate, and the parties dispute whether the intrastate, "warehouse-to-destination trip" is part of interstate commerce. *Texas v. United States*, 866 F.2d 1546, 1548–49 (5th Cir. 1989) ("fixed and persisting" intent inquiry developed from parties "litigat[ing] similar wrangles over 'hub-and-spoke' distribution systems for at least sixty years"); *see also* 29 C.F.R. § 782.7(b)(2) (inquiry applies to "transportation confined to points in a single State from a storage terminal of commodities which have had a prior movement by rail, pipeline, motor, or water from an origin in a different State"); ICC, "Policy Statement – Motor Carrier Interstate Transportation From Out-Of-State Through Warehouses to Point in Same State," 8 I.C.C. 2d 470, 1992 WL 122949, at *1 (April 27, 1992) ("ICC Policy Statement") (inquiry applies to "for-hire motor traffic moving from warehouses or similar facilities to points in the same State after a for-hire movement from another State").   The inquiry determines whether "placing goods in a warehouse" merely "interrupts" or actually "terminate[s] the goods' interstate journey." *Siller*, 109 F.3d 765; *see also Kennedy v. Equity Transportation Co., Inc.*, 663 F. App'x 38, 40 (2d Cir. 2016)

(inquiry addresses "when the warehousing of products terminates their journey," not "what makes a product's journey interstate in the first place"). The inquiry is inapplicable where, as here, the <u>undisputed</u> facts show that the crude oil was never warehoused, but rather moved continuously from oil field to pipeline to ships that transported it out of Texas. Ace's Brief at 3–6; Response (not disputing these facts).

### 1. <u>Plaintiffs Failed to Adequately Brief Their Argument that the "Fixed and Persisting Intent" Inquiry Applies</u>

Plaintiffs failed to adequately brief why they contend the "fixed and persisting intent" inquiry applies, relegating this argument to a perfunctory footnote. Response at 12 n.1. "Arguments raised in a perfunctory manner, such as in a footnote, are waived." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 n. 7 (5th Cir. 2003) (quotations omitted). Moreover, Plaintiffs' conclusory statement that unspecified "relevant case law" supports applying this inquiry "regardless of whether the goods are stored" is inadequate. Response at 12–13 n.1; *see Sindhi v. Raina*, 905 F.3d 327, 334 (5th Cir. 2018) ("[A] litigant can waive an argument if he fails to cite authority to support his position."). In fact, the cases Plaintiffs generally cite regarding the "fixed and persisting intent" inquiry contradict Plaintiffs' position, as discussed below.

Plaintiffs also claim, without support, that Ace wants crude oil to be treated differently than other products. Response at 13 n.1, 27. This is wrong: Ace

contends the "fixed and persisting intent" inquiry is inapplicable <u>not</u> because Plaintiffs transported crude oil, but because their transportation did not occur after the product "mov[ed] interstate into a warehouse for distribution." 29 C.F.R. § 782.7(b)(2).

Finally, Plaintiffs contend, without support, that pipelines are a type of "storage facility." Response at 13 n.1. This directly conflicts with the relevant regulation and defies common sense. 29 C.F.R. § 782.7(b)(2) (describing a pipeline as a method of "movement," <u>not</u> a storage facility); *see also, e.g.*, *Sierra Club v. U.S. Army Corps of Engineers*, 803 F.3d 31, 50 n.8 (D.C. Cir. 2015) ("Pipelines transport[] oil"); DOT, *General Pipeline FAQs*, https://www.phmsa.dot.gov/faqs/general-pipeline-faqs (last visited Jan. 24, 2024 ("[P]ipelines transport … crude oil").

### 2. <u>Plaintiffs' Cases Do Not Support Application of the "Fixed and Persisting Intent" Inquiry</u>

The rest of Plaintiffs' Response similarly provides no support for applying the "fixed and persisting intent" inquiry. Many of Plaintiffs' cases expressly involve intrastate movements <u>after warehousing</u>. Response at 10–23 (citing *Siller*, 109 F.3d 765 (transportation from "warehouse"); *Texas*, 866 F.2d at 1548 ("warehouse-to-destination trip"); *Galbreath*, 413 F.2d at 945 (transportation from "bulk plant" that court analyzed as a "warehouse"); *Brown v. AGM Ent., Inc.*, No. CIV. H-07-3439, 2008 WL 2704657, at *2 (S.D. Tex. July 3, 2008) (transportation

10

from "warehouse"); *Glanville v. Dupar, Inc.*, No. CIV.A. H-08-2537, 2009 WL 3255292, at **1, 10 (S.D. Tex. Sept. 25, 2009) (trips from "warehouse[s]" called "Appliance Distribution Centers"); *Guy v. Absopure Water Co.*, No. 20-12734, 2023 WL 1814212, at *3 (E.D. Mich. Feb. 8, 2023), *on reconsideration in part*, 2023 WL 3361148 (E.D. Mich. May 10, 2023) (transportation from "warehouse"); *Foreman v. Five Star Food Serv., Inc.*, 950 F. Supp. 2d 958, 962 (M.D. Tenn. 2013), *vacated in part*, 2013 WL 5675899 (M.D. Tenn. Oct. 18, 2013) (transportation from "warehouse");[4] *Romero v. Fueltech Oil Serv. Corp.*, No. 09-21948-CIV, 2010 WL 11505519, at *1 (S.D. Fla. Apr. 5, 2010) (intrastate transportation after interstate movement to "large storage tanks")).

Plaintiffs' other, non-binding cases involved intrastate transportation of recyclables to "transfer station" customers—which transportation was <u>not</u> inaugurated by such customers or subject to their control, unlike here—from which those customers often processed the recyclables or sold them to others before they moved interstate. Response at 11–25 (citing *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 220 (2d Cir. 2002) (intrastate transportation of empty containers to "recycling facility"); *Raymond v. Mid-Bronx Haulage Corp.*, No. 15-CIV-5803, 2017 WL 1251137, at *7 (S.D.N.Y. Mar. 31, 2017) (intrastate transportation of recyclables to "transfer stations," which court analyzed as a

---

[4] This order was vacated "with respect to the FLSA claims," further negating its persuasiveness. *Foreman*, 2013 WL 5675899, at *4.

"warehouse"); *Alice v. GCS, Inc.*, No. 05-C-50132, 2006 WL 2644958, at *1 (N.D. Ill. Sept. 14, 2006) (same); *Craft v. Ray's, LLC*, No. 1:08-CV-627-RLY-JMS, 2009 WL 3163148, at *6 (S.D. Ind. Sept. 29, 2009), *amended on reconsideration*, 2010 WL 148306 (S.D. Ind. Jan. 13, 2010) (same); *Estrada v. Ecology Servs. Refuse & Recycling, LLC*, No. CV-GLR-17-496, 2018 WL 3458563, at **1, 3 (D. Md. June 12, 2018) (same); *Haynes v. S. Carolina Waste LLC*, 633 F. Supp. 3d 769, 774, 781 (D.S.C. 2022) (same); *Veney v. John W. Clarke, Inc.*, 28 F. Supp. 3d 435, 444 (D. Md. 2014) (same)).

Even if any of these non-binding cases could be read as applying the "fixed and persisting intent" inquiry where no warehousing occurred between interstate and intrastate movement, they would conflict with binding Fifth Circuit precedent and DOL/DOT guidelines.  *E.g.*, *Texas*, 866 F.2d at 1548–49; 29 C.F.R. § 782.7(b)(2); ICC Policy Statement, 1992 WL 122949.  They would also conflict with <u>numerous other Circuits'</u> recognition that this inquiry is designed for post-warehousing intrastate movement.  *Kennedy*, 663 F. App'x at 40; *Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895, 899 (7th Cir. 2009) (inquiry applies to "intrastate transportation from a storage terminal"); *California Trucking Ass'n v. I.C.C.*, 900 F.2d 208, 211–12 (9th Cir. 1990) (same); *Deherrera v. Decker Truck Line, Inc.*, 820 F.3d 1147, 1157 (10th Cir. 2016) (same).

### 3. **The Crude Oil Plaintiffs Transported was "Actually Moving" in Interstate Commerce**

Instead of the inapposite "fixed and persisting intent" inquiry, the Court should apply the general rule: intrastate movement of goods is in the flow of interstate commerce "if what is being transported is actually moving in interstate commerce within the meaning of [the MCA and FLSA]; the fact that other carriers transport it out of or into the State is not material." 29 C.F.R. § 782.7(b)(1). Binding precedent confirms that this test controls where, as here, no warehousing or similar stoppage potentially interrupts the flow of interstate commerce. *E.g.*, *United States v. Cap. Transit Co.*, 338 U.S. 286, 289–90 (1949) (transportation of passengers within D.C. was "part of a continuous stream of interstate transportation" since they were "going to and from … Virginia," even though company had no interest or involvement in passengers' interstate destination since it had "abandoned its District-Virginia bus line"); *Barefoot v. Mid-Am. Dairymen, Inc.*, 16 F.3d 1216 (5th Cir. 1994) (unpub., per curiam) (no analysis of intent, finding plaintiffs' in-state delivery of milk was in "a continuous movement of goods in interstate commerce" even though "it was temporarily stored until transported to [interstate] plants"); *Merchants Fast Motor Lines, Inc. v. I.C.C.*, 528 F.2d 1042, 1044 (5th Cir. 1976) (no analysis of intent, holding "[i]t is elemental that a carrier is engaged in interstate commerce when transporting goods …

13

ultimately bound for destinations beyond Texas, even though the route of the particular carrier is wholly within one state").

It is <u>undisputed</u> that (1) Plaintiffs <u>only</u> transported crude oil to fulfill Ace's contractual commitments to deliver certain amounts of crude oil meeting certain specifications to certain pipelines for its customers to retrieve; and (2) Ace's customers obtain this crude oil so that they can ship some of it out-of-state. Ace's Brief at 3–6; *see* Response (not disputing these facts). Thus, the crude oil Plaintiffs transported was "actually moving in interstate commerce," so the MCA exemption applies.

**B.    If The Court Applies the "Fixed and Persisting Intent" Inquiry, Ace's Customers' Intent to Ship the Crude Oil Out-of-State Controls**

### 1. Ace's Customers are a Shipper of the Crude Oil Transported by Plaintiffs

Plaintiffs <u>do not dispute</u> that Ace's customers had a "fixed and persisting intent" to ship the crude oil at issue to out-of-state refineries. Response at 7 (acknowledging "Ace's customers' interstate intent"); ROA.538 (same). Rather, Plaintiffs insist Ace is the "shipper" during Plaintiffs' leg of the journey. Response at 13–25. Yet, in doing so, Plaintiffs <u>ignore</u> this Court's precedent cited in Ace's Brief establishing that Ace's customers are, in fact, the "shipper" during the crude oil's entire journey. Instead, Plaintiffs improperly rely on non-binding, distinguishable cases.

14

Most notably, Plaintiffs <u>do not even attempt</u> to distinguish this Court's *Siller* decision. That's because *Siller* is not meaningfully distinguishable. Like *Siller*, Ace's <u>customers</u> "inten[ded] … to move [crude oil] continuously from [in-state oil fields] to [out-of-state refineries], via" Ace. *Siller*, 109 F.3d 765. And, like *Siller*, Ace's customers (1) "inaugurated the [interstate] shipment of" crude oil by entering into allocation contracts with Ace to obtain the crude oil they planned to ship interstate; (2) "arranged with" Ace, via the allocation contracts, to conduct the initial, intrastate leg of the crude oil's interstate journey; and (3) "maintained control over" the crude oil while on board Ace's trucks, including by designating the specific pipelines to which Ace would deliver certain amounts of crude oil meeting certain specifications on a monthly basis. Ace's Brief at 3–6.

Plaintiffs also wrongly contend that this Court's *Texas v. United States* decision supports their position simply because it distinguished between intrastate and interstate shipments. Response at 18, 30. However, like here, this Court found the relevant "shipper" was <u>not</u> the "local carriers" who transported carpet intrastate from an Arlington warehouse, or the "rail or motor carriers" who "ship[ped] the carpet from [out-of-state] to Arlington," but rather E&B, who entered into "transport arrangement[s]" with these carriers. *Texas*, 866 F.2d at 1549–50. The entire journey was in interstate commerce because <u>E&B</u> "intends that all its goods travel to final destinations in Texas." *Id.* at 1560. Here, too, Ace's customers

undisputedly "intend[] that" crude oil transported by Ace via their allocation contracts "travel to final destinations" in out-of-state refineries, so the entire journey is in interstate commerce.

Despite this precedent, Plaintiffs contend that only Ace's intent matters because Ace owns the crude oil during its leg of the journey, and is paid by its customers for the crude oil delivered.  Response at 15–16, 24.  This Court did not deem such facts relevant to its analysis in *Siller*, even though the customer-shipper "ordered products based on [defendant's] sales projections" and defendant told the customer-shipper "the amount of beer needed by [defendant's] warehouses," indicating that—like Ace—defendant not only transported beer, but also bought and sold it, all within Texas.[5]  *Siller*, 109 F.3d 765.  Thus, whether an entity is a shipper does <u>not</u> depend on who owns the goods during the transportation.  In other words:

> "[P]laintiffs' characterization of [Ace] as the shipper … is analytically unsound.  [Ace] was not a shipper; it was a carrier.  <u>The shipper is the entity that purchases the transportation services of the carrier</u>."

*Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 59 (2d Cir. 2012) (emphasis added, quotations omitted); *see also Noll v. Flowers Foods Inc.*, 442 F. Supp. 3d 345, 361

---

[5] Texas <u>requires</u> "strict separation between the manufacturing, wholesaling, and retailing levels" of its alcoholic beverage system, under which "manufacturers," like AB, "<u>sell their product</u> to distributors," like L&F, who "must remain <u>independent</u> from" the manufacturers and "sell … to retailers."  *Texas Alcoholic Beverage Comm'n v. Live Oak Brewing Co., LLC*, 537 S.W.3d 647, 649 (Tex. App.—Austin 2017) (emphasis added).

(D. Me. 2020) (court "not persuaded that the purported allocation of ownership to Plaintiffs is the silver bullet Plaintiffs think it is" for interstate commerce analysis).

Similarly, Plaintiffs argue that Ace's "interest" in the crude oil makes it the exclusive "shipper" during Ace's intrastate leg, alleging that Ace decides which oil fields to purchase from and which transportation mechanism, routes, and drivers to use, and bears the cost and risks of the transport.  Response at 16 & n.3, 28–30.  But in *Siller*, defendant "determined the amount of beer needed by [its own] warehouses," "sen[t] up its [own] trucks" to collect this beer, presumably at its own cost and risk and using routes it chose, and assigned plaintiffs to "dr[ive] these products from the AB warehouse … to [defendant's] warehouses."  *Siller*, 109 F.3d 765.  Yet, this Court analyzed the intent of the interstate shipper.  *Id.*  Thus, Ace's "interest" in the crude oil during its intrastate leg does not warrant ignoring Ace's customers' undisputed interstate intent.

## 2. Plaintiffs' Case Law is Not Binding on this Court and, In All Events, Wholly Distinguishable

Instead of relying on this Court's precedent, Plaintiffs contend various non-binding cases support ignoring Ace's customers' intent.  Response at 13–25.  Initially, to the extent those cases conflict with *Siller*, *Texas*, or other Fifth Circuit precedent, they must be disregarded.  But also, these cases are distinguishable on their facts and support finding that Ace's customers' intent matters here.

For example, Plaintiffs cite *Guy* for the proposition that the "shipper" is the entity that "plays the most significant role in directing and controlling the transportation." *Guy*, 2023 WL 1814212, at *6. *Guy* cites no binding authority that states this test. *Id*. But even using *Guy*'s standard, the undisputed facts show that Ace's <u>customers</u> (1) directed the crude oil's transportation, first through their allocation contracts with Ace and then through their subsequent shipment to out-of-state refineries; and (2) controlled the transportation by dictating the quantities and specifications of the crude oil and the pipelines to which Ace had to deliver it.

Plaintiffs also rely on *Romero*, where defendants transported gas within Florida from storage tanks after it had been transported into Florida by others. *Romero*, 2010 WL 11505519, at *1. Notably, <u>contrary</u> to Plaintiffs' contention, the court correctly found that the relevant "shipper" was <u>not</u> defendants, but the entities who conducted the <u>interstate</u> transportation. *Id.* However, <u>unlike</u> here, the interstate shippers had <u>no</u> involvement in defendants' intrastate movement. *Id.* Rather, defendants purchased fuel from the interstate shippers "on a daily basis" and wholly controlled its subsequent in-Florida transportation. *Id.* at **1–2. By contrast, Ace's transportation is not independent of its customers—Ace <u>only</u> purchases and transports the crude oil because a customer has contractually <u>required</u> Ace to do so, with that customer controlling the amount, specifications,

18

and destination of the crude oil.  So, unlike *Romero*, Ace's customers control the crude oil's entire journey, including Ace's intrastate leg.

Plaintiffs' other cases involve defendants transporting recyclables in-state and selling them to other entities who subsequently sorted, processed, and/or further sold them before they were transported out of state.  Unlike here, defendants were <u>not</u> fulfilling specific allocation contracts with their customers; defendants simply brought whatever materials they collected to the customers to sell or otherwise dispose of them. *Bilyou*, 300 F.3d at 219–20 (defendant collected empty product containers and transported them to "recycling facility," who "purchase[d] them");[6] *Alice*, 2006 WL 2644958, at *1 (defendant collected its own "drop boxes … full of debris" and delivered them to "recycling center" that "sorted the debris" and determined which "recyclable materials it salvaged"); *Craft*, 2009 WL 3163148, at *2 (defendant's customers "do not know exactly what type of materials are being transported by [defendant's] drivers … until the loads arrive at a facility");[7] *Estrada*, 2018 WL 3458563, at *1 (defendant simply collected

---

[6] Notably, *Bilyou* <u>affirmed</u> summary judgment, rejecting plaintiff's argument that defendant's "handling of the empties is not part of an interstate shipment because it is Mid–Hudson, not [defendant], that processes the empties and arranges for their out-of-state shipment." *Bilyou*, 300 F.3d at 224.  Instead, Plaintiffs rely on *dicta* that Bilyou's argument "<u>might</u> be valid" if defendant and Mid-Hudson were not "related entities." *Id.*  But, this Court has examined interstate shippers' intent despite the intrastate carrier being unrelated. *Siller,* 109 F.3d 765 (defendant was "beer wholesaler" with whom interstate shipper "arranged" intrastate transport); *Texas*, 866 F.2d at 1549 (interstate shipper "employed" "trucking firm" for intrastate transport).

[7] Again, *Craft* <u>granted</u> summary judgment to defendant, since while defendant and its customer did "not know in advance the ultimate destination of specific loads of recyclables … , they do

whatever "recycling and waste" was on its routes and delivered these materials to "various transfer sites or garbage dumps"); *Haynes*, 633 F. Supp. 3d at 774 (same); *Raymond*, 2017 WL 1251137, at *1 (same); *Veney*, 28 F. Supp. 3d at 439 (same). Plaintiffs claim—without evidentiary support—that these cases are analogous because Ace "exerts complete … control over the crude oil until it puts it into the hands of its customers." Response at 24. The <u>undisputed</u> facts show otherwise: Ace's customers controlled the amounts of crude oil transported, the specific pipelines to which it was delivered, and the specifications it had to meet. Ace's Brief at 3–4. Thus, Plaintiffs' cases do not support ignoring Ace's customers' intent.

Finally, Plaintiffs' arguments are based on a mischaracterization of Ace's business. Response at 3, 26–28. Ace does <u>not</u> bring whatever crude oil it can buy to a pipeline with the hope of selling it to any customer. Ace's Brief at 3–6. Instead, Ace's customers contract for Ace's <u>gathering</u> services to procure not just crude oil at the pipeline, but Ace's <u>transportation</u> of particular crude oil from the oil field to the contractually-specified pipeline during the designated timeframe— in the same way the interstate shipper in *Siller* arranged for the in-state distribution of beer through the defendant distributor. *Id.* Thus, the result here must be the same as in *Siller*—the MCA exemption applies.

---

know that a large portion of each load will ultimately go out-of-state." *Craft*, 2009 WL 3163148, at *7.

### 3. **If Plaintiffs' Contention Were Accepted, No Independent Intrastate Carrier Could Ever be Part of Interstate Commerce**

Plaintiffs argue that: (1) <u>only</u> the "fixed and persisting intent" of the entity conducting the intrastate leg of a product's interstate journey matters where that entity owns the product during the intrastate leg and has no "vested interest"[8] in or control over the interstate leg; and (2) such intrastate entity can, therefore, <u>never</u> be part of interstate commerce unless it is related to the interstate shipper. Response at 20–30. This would mean that <u>no</u> independent carrier performing an intrastate leg of a product's interstate journey could <u>ever</u> be in the flow of interstate commerce. Plaintiffs' unsupported position is <u>irreconcilable</u> with this Court's holdings in *Siller* and *Texas*, discussed above, and must be rejected.

## III. **PLAINTIFFS HAD A REASONABLE EXPECTATION OF INTERSTATE TRAVEL**

First, Plaintiffs incorrectly contend that this Court's review is limited to whether a volunteer system creates a reasonable expectation of interstate travel for purposes of the MCA exemption. Response at 30–31. But, the legal issue raised by the Court's MSJ Order is "whether the MCA exemption applies." *Allen*, 755 F.3d at 282. Ace's system of assigning interstate routes is just <u>one</u> factor in the reasonable expectation analysis, and this Court's precedent confirms that no factor is "dispositive." *Olibas*, 838 F.3d at 449 n. 11. Thus, the Court should examine

---

[8] Plaintiffs incorrectly contend that the District Court did not use "vested interest" as a test, Response at 26 n.4, when the Appeal Order <u>specifically</u> asks whether "the 'vested interest' test appl[ies]" and "[i]f so, whose interests may the court consider." (ROA.797.)

whether <u>all</u> the <u>undisputed</u> facts establish the MCA exemption applies as a matter of law.

Next, Plaintiffs argue that the District Court correctly found a "fact issue remained" as to the reasonable expectation analysis. But, Plaintiffs' Response—like the MSJ Order—identifies <u>no such fact issue</u>. Plaintiffs' Response <u>does not dispute</u> that *Olibas* factors 1, 3, 4, 5, 6, and 8 favor a reasonable expectation finding. *See* Ace's Brief at 6–8, 43; *see generally* Response at 33–45. As to the other two factors, Plaintiffs only dispute the "results that flow from the admitted facts," which does not prevent summary judgment. *Beck*, 882 F.2d at 998.

## A. Fifth Circuit Precedent Forestalls Plaintiffs' Argument for a District-by-District Analysis

Regarding *Olibas* factor 2—"whether the employer regularly sends some drivers to interstate destinations"—Plaintiffs contend that the Court should disregard the <u>undisputed</u> evidence that 26% of Ace's drivers drove an interstate assignment during the relevant period and instead, look only at Ace's STX drivers. Response at 33–34. This is <u>not</u> a dispute of fact, but one of law.

This Court has <u>twice</u> rejected similar arguments for a narrower view of drivers' interstate trips. *Allen*, 755 F.3d at 287 (rejecting plaintiffs' "district-by-district … analysis to measure the interstate activities," explaining that "the facts of this case do not support such an artificial division"); *Songer*, 618 F.3d at 472–74 (rejecting argument that "Defendants must demonstrate that each driver personally

transported property by motor vehicle across state lines," explaining the MCA exemption depends "on the class of work involved in the employee's job"). Here, as in *Allen*, (1) Ace "operated under a single DOT number;"[9] (2) its STX terminal and other terminals were "not independent legal entities," but rather all Crude Oil Drivers were employed by Ace;[10] and (3) its terminals "borrowed personnel and equipment from each other" and "solicited and accepted projects outside their geographic areas," as shown by, among other things, Escobedo's West Texas trips and the numerous trips made by all terminals to and from other states.[11]  *Allen*, 755 F.3d at 287.  Thus, the District Court correctly rejected Plaintiffs' STX argument and considered the fact that 26% of Ace's Crude Oil Drivers drove interstate routes during the applicable time period.  (ROA.649.)  Importantly, Plaintiffs <u>do not dispute</u> that 26% results in *Olibas* factor 2 weighing in Ace's favor.  *See generally* Response at 33–37; *see also* Ace's Brief at 44–45 (collecting cases finding lower percentages sufficient).

Instead of analyzing *Allen* and *Songer*, Plaintiffs incorrectly contend that *Amaya* supports their position because it discusses the "class of employees [plaintiff] represents."  *Amaya*, 741 F. App'x at 205.  But Amaya's putative class was <u>not</u> geographically limited; it included all "installer[s] of office furniture."  *Id.*

---

[9] (ROA.336, 340–43.)

[10] (ROA.336–38.)

[11] (ROA.189, 356–70, 377.)

at 204.[12]  And there, defendants' evidence provided "no information regarding the nature of [the installers'] involvement" in interstate travel, whereas Ace presented <u>undisputed</u> evidence that its Crude Oil Drivers regularly drove across state lines. (ROA.337–38, 356–70.)   Accordingly, *Amaya* does not support Plaintiffs' argument for a limited analysis of interstate driving by Ace's STX drivers.   And, even if it did, a "de minimis rule should seldom, if ever, be applied to one who drives a motor vehicle carrying property of a private carrier in interstate commerce." *Sinclair v. Beacon Gasoline Co.*, 447 F. Supp. 5, 11 (W.D. La. 1976), *aff'd*, 571 F.2d 978 (5th Cir. 1978); *see also, e.g.*, *Walters v. Am. Coach Lines Of Miami, Inc.*, 575 F.3d 1221, 1228 (11th Cir. 2009) ("de minimis requirement" for interstate commerce "may be inapplicable to situations such as this, where the company has the appropriate federal licensing and there is undisputed proof of some transportation that crosses state lines").   Thus, even crediting Plaintiffs' argument, *Olibas* factor 2 still weighs in Ace's favor.

Finally, Plaintiffs contend that the "four-month rule" prevents finding that Plaintiffs had a reasonable expectation of interstate driving throughout their employment.  Response at 40–42.  But, Ace presented <u>undisputed</u> evidence that "in each month" while Plaintiffs were employed by Ace within the FLSA's limitations periods, "Texas-based Ace Crude Oil Drivers were assigned certain routes by Ace

---

[12] Tellingly, Plaintiffs seek a collective of <u>all</u> Ace Crude Oil Drivers, not just STX drivers. (ROA.584.)

that required them to drive crude oil across state lines." (ROA.582; *see* Ace's Brief at 9.) Thus, even if the "four-month rule" applies, *Olibas* factor 2 supports summary judgment in Ace's favor.

### B.    Ace's Assignment System Does Not Prevent Summary Judgment

Plaintiffs contend there is no evidence that Ace ever assigned any interstate routes. But Escobedo <u>herself</u> testified that she <u>was</u> "aware that other Ace crude oil drivers were, in fact, assigned to drive loads of crude … across state lines." (ROA.409–10; *see also* ROA.582 (Ace representative declaring that "Texas-based Ace Crude Oil Drivers were assigned certain routes by Ace that required them to drive crude oil across state lines as part of their work for Ace").)

Plaintiffs also contend, without support, that Ace's interstate route assignment system <u>alone</u> prevents summary judgment on the reasonable expectation analysis. Response at 44–45. This contention conflicts with this Court's instruction that "none of the [reasonable expectation factors] is dispositive." *Olibas*, 838 F.3d at 449 n.11. Since <u>all</u> the other factors weigh in favor of finding that Ace's Crude Oil Drivers had a reasonable expectation of interstate driving, Ace's system—even if considered a volunteer or quasi-volunteer system—<u>cannot</u>, alone, prevent summary judgment. *See* Ace's Brief at 45–47 (collecting cases finding such systems did not prevent summary judgment); *Faludi v. U.S. Shale Sols., L.L.C.*, 950 F.3d 269, 275 (5th Cir. 2020) (explaining in similar

context that "[a] fact issue does not exist simply because facts point in both directions").

### C. Ace's Other Evidence Confirms Plaintiffs' Reasonable Expectation of Interstate Driving

Plaintiffs also incorrectly contend that this Court should reject Ace's other evidence of Plaintiffs' reasonable expectation of interstate driving: their Offer Letters and deposition testimony acknowledging they did, in fact, expect to have to drive interstate during their employment with Ace. Response at 38–40. Plaintiffs' assertion that they cannot contract away their FLSA rights is a red herring. Plaintiffs cite cases stating that employees cannot agree to the ultimate legal conclusion that they are "exempt." Here, Plaintiffs simply agreed that, as a factual matter, they expected to have to drive interstate as part of their job. Plaintiffs ignore that the DOT <u>itself</u> views "statements from drivers" and "employment arrangements" as "[s]atisfactory evidence" of drivers' reasonable expectation of interstate driving. DOT, 1981 WL 115508 at **37902–03. Thus, Plaintiffs' offer letters and deposition testimony can, and should, be considered as additional evidence in favor of their reasonable expectation of interstate driving.

### D. The Undisputed Evidence Warrants Summary Judgment to Ace on Plaintiffs' Reasonable Expectation of Interstate Driving

Finally, Plaintiffs incorrectly contend that Ace ignores the District Court's conclusion that the evidence regarding the *Olibas* factors was "inconclusive and

conflicting." Response at 42–43. To the contrary, Ace has specifically argued that this conclusion was <u>error</u> because the District Court failed to identify any such "inconclusive or conflicting" evidence. Ace's Brief at 42. Plaintiffs' Response, too, fails to identify any "inconclusive or conflicting" evidence regarding any of the *Olibas* factors.

Instead, Plaintiffs vaguely argue that Ace's evidence is "insufficient as a whole." Response at 43. But, they never identify any alleged insufficiency. Plaintiffs also claim the factual record is incomplete because it does not include evidence about "which employees made interstate trips." *Id.* But, Plaintiffs cite <u>no</u> legal authority supporting that this evidence would affect the reasonable expectation analysis. Instead, "this court's precedent effectively forecloses an employee-by-employee analysis," so employee-specific evidence is <u>not</u> relevant. *Allen*, 755 F.3d at 284. Also, Plaintiffs never claimed such evidence was necessary in response to Ace's MSJ, which forecloses this argument. (ROA.516–38); *Ferrant v. Lowe's Home Ctrs., Inc.*, 494 F. App'x 458, 463 (5th Cir. 2012) (rejecting argument that "further discovery … may have produced" evidence to support plaintiff's position where she "never sought relief under Rule 56(d)" (quotations omitted)).

Thus, since there are <u>no</u> material fact disputes regarding any *Olibas* factor, and the undisputed facts overwhelmingly favor finding Plaintiffs had a reasonable

expectation of interstate driving, it was reversible error for the District Court to not determine this issue as a matter of law. *E.g.*, *Horvath v. City of Leander*, 946 F.3d 787, 792 (5th Cir. 2020) (summary judgment on "reasonableness" proper where evidence "point[s] so strongly and overwhelmingly in favor of [defendant] that reasonable [jurors] could not reach a contrary verdict"); *B. A. Kelly Land Co. v. Aethon Energy Operating, LLC*, 25 F.4th 369, 383 (5th Cir. 2022) (error to deny summary judgment on record supporting such judgment).

## CONCLUSION AND RELIEF SOUGHT

For the reasons detailed in Ace's Brief and herein, Ace respectfully requests that this Court render summary judgment in Ace's favor on the MCA exemption.

Date: January 24, 2024          Respectfully submitted,

*/s/ Peter J. Stuhldreher*
**Peter J. Stuhldreher**
Texas Bar No. 24056393
**Mark D. Temple**
Texas Bar No. 00794727
**Paul M. Knettel**
Texas Bar No. 24102031
**BAKER & HOSTETLER LLP**
811 Main Street, Suite 1100
Houston, Texas 77002
Phone: (713) 751-1600
Facsimile: (713) 751-1717
pstuhldreher@bakerlaw.com
mtemple@bakerlaw.com
pknettel@bakerlaw.com

ATTORNEYS FOR DEFENDANT-
APPELLANT ACE GATHERING, INC.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 24, 2024, a copy of the foregoing Brief was filed electronically. Notice of this filing will be sent by operation of the Court's Electronic Filing System. Parties may access this filing through the Court's system.

Dated: January 24, 2024

*/s/ Peter J. Stuhldreher*
Peter J. Stuhldreher

## **CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B)(ii) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f), this brief contains 6,499 words, as determined by the word count function of Microsoft Word. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman typeface.

*/s/ Peter J. Stuhldreher*
Peter J. Stuhldreher

Counsel for Defendant-Appellant
Ace Gathering, Inc.

Dated: January 24, 2024